**2021 WI 47**

# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2010AP1939-D |

| | |
|---|---|
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Christopher A. Mutschler, Attorney at Law: |
| | |
| | Office of Lawyer Regulation, <br>          Complainant-Respondent, <br>     v. <br> Christopher A. Mutschler, <br>          Respondent-Appellant. |

ATTORNEY MUTSCHLER REINSTATEMENT PROCEEDINGS
Reported at 388 Wis. 2d 486,933 N.W.2d 99
PDC No:2019 WI 92 - Published

| | |
|---|---|
| OPINION FILED: | May 25, 2021 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |

Per Curiam.
NOT PARTICIPATING:
KAROFSKY, J., did not participate.

ATTORNEYS:

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.  2010AP1939-D

STATE OF WISCONSIN                    :            IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Christopher A. Mutschler, Attorney at Law:**

**Office of Lawyer Regulation,**

      **Complainant-Respondent,**

  v.

**Christopher A. Mutschler,**

      **Respondent-Appellant.**

**FILED**

**MAY 25, 2021**

Sheila T. Reiff
Clerk of Supreme Court

ATTORNEY reinstatement proceeding.    *Reinstatement granted.*

¶1    PER CURIAM.    We review a report filed by Referee Robert E. Kinney recommending that the court reinstate the license of Christopher A. Mutschler to practice law in Wisconsin.  Since no appeal has been filed from the referee's report and recommendation, our review proceeds pursuant to Supreme Court Rule (SCR) 22.33(3).[1]

---

[1] SCR 22.33(3) provides:  "If no appeal is timely filed, the supreme court shall review the referee's report, order reinstatement, with or without conditions, deny reinstatement, or order the parties to file briefs in the matter."

After careful review of the matter, we adopt the referee's findings of fact and conclusions of law and agree that Attorney Mutschler's petition for reinstatement should be granted. As is our normal practice, we also direct that the costs of this reinstatement proceeding, which are $9,028.76 as of March 29, 2021, be paid by Attorney Mutschler.

¶2 Attorney Mutschler was admitted to practice law in Wisconsin in 1991 and practiced predominately in the area of criminal traffic defense.

¶3 In 2011, this court accepted Attorney Mutschler's petition for the consensual revocation of his Wisconsin law license and ordered him to pay restitution totaling $246,723 within 180 days. At the time of his revocation, there were 59 grievances pending against Attorney Mutschler. In virtually all of the cases, Attorney Mutschler would obtain payment of an advanced fee to represent a client in a traffic, operating while intoxicated, or a criminal case. In re Disciplinary Proceedings Against Mutschler, 2011 WI 74, 336 Wis. 2d 241, 804 N.W.2d 680. Attorney Mutschler would frequently advise the client to enter a no contest plea and promised that he would win the case on appeal. In some cases, Attorney Mutschler never notified the client of the scheduled hearing on the pending charge or citation, so the client would fail to appear. Sometimes Attorney Mutschler himself would fail to appear at scheduled hearings, with the result being that a default judgment was entered against the client. In other cases, the client would enter a guilty or no contest plea, and Attorney Mutschler would either fail to file an appeal or would fail to

2

prosecute the appeal properly, which would lead to the appeal being dismissed. Attorney Mutschler frequently failed to communicate adequately with his clients, with the result being that many had to either hire new counsel or proceed on their own without counsel.

¶4 In addition, in 2008, Attorney Mutschler pled no contest to a charge of uttering a forgery, a felony, and to a charge of possession of an illegally obtained prescription medication, a misdemeanor. The forgery count was subject to a deferred prosecution agreement and was later dismissed on the prosecutor's motion. These charges arose from Attorney Mutschler being caught in the act of forging prescription forms and using the forms to obtain pain medication.

¶5 Attorney Mutschler filed his first petition for reinstatement in 2017. The Office of Lawyer Regulation (OLR) opposed the petition. After an evidentiary hearing, Referee Jonathan V. Goodman stated that in his 11 years of handling OLR cases, Attorney Mutschler's case posed the most difficult one the referee had seen. Referee Goodman ultimately recommended that this court deny Attorney Mutschler's petition for reinstatement because of Attorney Mutschler's failure to have paid restitution or to have established a plan to do so. Attorney Mutschler appealed. This court concluded that the facts of record supported the referee's determination that, "there is nothing in this record that gives the referee confidence that Mr. Mutschler would engage in a program to repay his restitution once he became employed if his license was reinstated." In re Reinstatement of Mutschler, 2019 WI 92, 388 Wis. 2d 486, 933 N.W.2d 99.

3

¶6 Attorney Mutschler filed his second petition for reinstatement on July 17, 2020. A hearing was held, via Zoom, before the referee on January 28, 2021. The witnesses at the hearing were Attorney Mutschler and K.D., a former client, who retained Attorney Mutschler to represent him in a traffic offense case in 2008 or 2009. At the hearing, Attorney Mutschler apologized to K.D. K.D. testified that he paid Attorney Mutschler $5,500, later found out that Attorney Mutschler had missed deadlines in the case, which prompted K.D. to file a grievance against Attorney Mutschler and required him to hire a new attorney and pay him another $5,500. In spite of this unpleasant experience, K.D. harbors no animosity toward Attorney Mutschler. He testified at the hearing:

> Everybody makes mistakes in life. Chris Mutschler was a very nice guy when I met him. He went through some hard times, I understand. . . . I'm not here to cut his throat. I am here to say I would like reparations for the money that was basically, kind of, stolen from me. But after this many years if he wants to go back and practice being a lawyer using his abilities that God gave him, I'm not going to stand in the way. . . . I do want to reiterate that everybody deserves a second chance, and I don't think there's one of you guys sitting on the panel that haven't made a mistake that you regret. I accept Chris's apology and I hope you give him a second chance.

¶7 By the time of the hearing, Attorney Mutschler had paid $3,200 of restitution to the Wisconsin Lawyers' Fund for Client Protection (the Fund). He testified that it would be very difficult for him to locate many of his former clients, and he knew if he paid the Fund there would be an unassailable track record of his payments. Attorney Mutschler testified that the

4

employment he has been able to obtain since his revocation has paid de minimus wages and "there's just no way on $17,000 a year I can pay everybody back that I need to pay as quickly as I need to pay them." He said if his license is reinstated he has a job waiting that will pay $65,000 a year to start, and that income will allow him to significantly increase his payments, both in terms of restitution and in terms of paying off his other debts.

¶8 The referee issued his report and recommendation on March 9, 2021. The referee concluded that Attorney Mutschler has satisfied the requirements for reinstatement of his license to practice law in Wisconsin and recommends that his petition for reinstatement be granted.

¶9 Supreme Court Rule 22.31(1) provides the standards to be met for reinstatement.[2] Specifically, the petitioner must show by clear, satisfactory, and convincing evidence that he or she has the moral character to practice law, that his or her resumption of the practice of law will not be detrimental to the administration of justice or subversive to the public interest, and that he or she has complied with SCR 22.26 and the terms of the order of suspension. In addition, SCR 22.31(1)(c) incorporates the statements that a petition for reinstatement must contain pursuant

---

[2] Effective January 1, 2021, substantial changes were made to the rules pertaining to lawyer disciplinary procedures, including the reinstatement rules, SCR 22.29 through 22.33. See S. Ct. Order 19-06, 19-07, 19-08, 19-09, 19-10, 19-11, and 19-12, 2020 WI 62 (issued June 30, 2020, eff. Jan. 1, 2021). Because this reinstatement proceeding commenced prior to January 1, 2021, unless otherwise indicated, all references to the supreme court rules will be to those in effect prior to January 1, 2021.

to SCR 22:29(4)(a)-(m). Thus, the petitioning attorney must demonstrate that the required representations in the reinstatement petition are substantiated.

¶10 When reviewing referee reports in reinstatement proceedings, we utilize standards of review similar to those used for reviewing referee reports in disciplinary proceedings. We do not overturn a referee's findings of fact unless they are clearly erroneous. On the other hand, we review a referee's legal conclusions, including whether the attorney has in fact satisfied the criteria for reinstatement, on a de novo basis. In re Disciplinary Proceedings Against Jennings, 2011 WI 45, ¶39, 334 Wis. 2d 335, 801 N.W.2d 304; In re Disciplinary Proceedings Against Gral, 2010 WI 14, ¶22, 323 Wis. 2d 280, 779 N.W.2d 168.

¶11 The OLR did not dispute that Attorney Mutschler desires to have his license reinstated; he has not practiced law during the period of his revocation; he has maintained competence and learning in the law by attendance at identified educational activities; his proposed use of his license if reinstated was appropriate; and he provided a full description of all business activities during the period of revocation. The referee readily agreed that Attorney Mutschler satisfied all of those requirements.

¶12 Throughout the course of this reinstatement proceeding, the OLR expressed concern about several of the reinstatement criteria, and the referee discussed those issues at length in his report. We will, likewise, discuss them in some detail. First, the OLR contended that Attorney Mutschler made an inaccurate

6

statement in his second reinstatement petition when he said, "ultimately, the referee [in the first reinstatement proceeding] concluded that the petitioner met the conditions except for [his payment of and plans to pay restitution]." The OLR argued that by making this statement, Attorney Mutschler engaged in conduct since the revocation which has not been exemplary and above reproach. Referee Kinney termed the OLR's position "a bridge too far." The referee noted that Attorney Mutschler made the same argument in his appeal from Referee Goodman's recommendation that his first petition for reinstatement be denied, and this court referenced it in its opinion by saying: "[i]n the absence of adverse findings, Attorney Mutschler reasons that 'as Referee Goodman has found, Mr. Mutschler has satisfied all of the necessary criteria for reinstatement, other than repaying the Fund.'" Mutschler, 2019 WI 92, ¶11. The referee said not only did this court not criticize Attorney Mutschler's reasoning in this regard, it did not expressly say it disagreed with it. To the contrary, the referee said Attorney Mutschler's statement appeared to be a fair interpretation of Referee Goodman's report, which focused only on the restitution issue in ultimately recommending that Attorney Mutschler's bid for reinstatement be denied.

¶13 Second, the OLR argued that Attorney Mutschler's failure to protect client files weighed against granting his reinstatement petition. The referee noted that at one point Attorney Mutschler was evicted from his law office and rented a storage unit into which he placed items of property from his law office, including 10 to 15 client files. Attorney Mutschler did not have sufficient

7

resources to pay the rental arrearages and as a result, in 2015 he was subsequently barred from accessing the storage unit and its contents were removed and disposed of.

¶14 The referee said in determining the seriousness of Attorney Mutschler's breach of his duty to protect client files, it was important to note that no client ever asked for the return of a file. The referee opined that was not surprising given that Attorney Mutschler specialized in drunk driving defense and the typical file was likely to have contained little more than a copy of a citation or a criminal complaint. The referee noted there was unlikely to be any work product in the files because Attorney Mutschler admitted in his consensual revocation proceeding that because of his addiction he did little or nothing of value for his clients during that time period. The referee also opined that the contents of the files could have been readily replicated by successor counsel obtaining copies from the court files or prosecutors' offices. In addition, the referee stated that the client files at issue dated back to 2008 to 2010, and under standard Wisconsin dispositional guidelines, by 2015 those cases would likely have been long since disposed of and the files useless. The referee said attempting to retrieve the files would have been a meaningless waste of time, and it was more prudent for Attorney Mutschler to have prioritized his rent, child support payments, and efforts to reinstate his driver's license rather than spending money to retrieve old case files that were obsolete.

¶15 Third, the OLR expressed concern that Attorney Mutschler had filed an unsigned affidavit of compliance in the first

8

reinstatement proceeding. The referee noted that Attorney Mutschler testified at the first reinstatement hearing that he had made an inadvertent error and sent the wrong copy of the affidavit along with his original reinstatement petition. He promptly corrected the mistake. The referee noted that in its post hearing brief, the OLR readily conceded this should not be a bar to reinstatement.

¶16 Fourth, the OLR pointed out that when Attorney Mutschler was asked to produce tax returns for 2015 to 2019, he failed to produce returns for 2015 and 2016. The referee noted that in its post hearing brief, the OLR acknowledged that Attorney Mutschler was not employed during those years and presumably had no reportable income.

¶17 Fifth, the OLR pointed out that Attorney Mutschler has accumulated child support and maintenance arrears totaling over $400,000 and this should be a relevant consideration as to whether his conduct since his revocation has been exemplary. The referee noted that Attorney Mutschler testified at the second reinstatement hearing that at the time of his divorce, which he termed "the absolute worse time in my life," he stipulated to child support and maintenance of $3,400 or $3,500 per month, an amount far beyond his means even at the time he agreed to it. Attorney Mutschler testified, "I just stipulated because with the mind of the depressive addict I thought I could do that." Attorney Mutschler ultimately petitioned to reduce his child support and maintenance obligations to $350 per month, but by the time he did so, the amount of the arrearage was staggering. The referee notes

that Wisconsin law prohibited the circuit court from retroactively wiping out any arrears before Attorney Mutschler's motion for a reduction in his obligations was filed. See Wis. Stat. § 767.59(1m). In addition, the referee points out that § 767.511(6) mandates that interest of one percent per month be assessed on arrearage. As a result, the referee notes that each month Attorney Mutschler makes a payment of $400 he falls further behind by $3,600. The referee notes that the OLR concedes that since May 2015, Attorney Mutschler has made his court order support obligations by paying $400 per month.

¶18 Sixth, the OLR expressed concern about the amount of Attorney Mutschler's personal debt. The referee notes that for several years Attorney Mutschler has taken on no new debt and has been able to repay much of the loan debt he owed to friends.

¶19 Seventh, the OLR expressed concern that for several years Attorney Mutschler drove on a suspended driver's license. The referee notes that Attorney Mutschler truthfully acknowledged that since he did not have the money to pay off various traffic tickets, his driver's license was suspended and he continued to drive on a suspended license. However, the referee also notes that Attorney Mutschler paid off all traffic fines years ago, took the steps necessary to reinstate his driver's license, paid the requisite reinstatement fee, and now drives legally.

¶20 Eighth, the OLR, as in the first reinstatement proceeding, continued to express concern about Attorney Mutschler's failure to pay much in the way of restitution.

¶21 The referee said the eight concerns raised by the OLR represent a very small part of the whole story in this case, and while it is appropriate to reach back into a petitioner's past, that must be done in a balanced way. The referee said during Attorney Mutschler's 18 years of practice he rose to the pinnacle of his profession, lectured regularly, wrote a treatise for the State Bar and for the Wisconsin Impaired Driving Center at the University of Wisconsin, authored and published dozens of articles, and was called upon to testify before the Wisconsin Legislature on four occasions regarding amendments to the traffic code. The referee said the lifeblood of drunk driving defense is motion practice, and Attorney Mutschler had an outstanding reputation for thinking outside the box in crafting innovative motions.

¶22 The referee said, "when the petitioner fell, he fell hard." The referee pointed to Attorney Mutschler's testimony at the first reinstatement hearing about his addiction to pain medication, and he explained how he ultimately went about getting sober. The referee also noted that Attorney Mutschler testified at the second reinstatement hearing that the OLR summoned him to appear for a meeting at their offices in Madison to discuss the 59 grievances that had been filed against him, and almost immediately upon his arrival in Madison, Attorney Mutschler signed a petition acknowledging that he could not successfully defend against the allegations of misconduct and he agreed to the consensual revocation of his law license.

11

¶23 The referee said that during the time since his revocation, Attorney Mutschler has lived an extremely frugal existence; has maintained sobriety; has accepted very modest employment opportunities; has kept current on his child support obligation; and has acknowledged his wrongdoing and apologized to his former clients. The referee said, "as much as he would like to be able to do so, Mr. Mutschler cannot turn back the hands of the clock." The referee said as a result of this proceeding, Attorney Mutschler's life has become an open book. The referee noted that the record contains six separate letters of recommendation from Attorney Mutschler's former colleagues. The referee said, "I have never previously read letters of recommendation which were as strong and unequivocal, and in which the authors had obviously taken so much time to carefully describe the changes they had observed."

¶24 The referee notes that if reinstated, Attorney Mutschler has a job waiting which will pay him a starting salary of $65,000. Attorney Mutschler has indicated that $500 per month will be automatically taken from his wages by wage assignment and paid toward restitution, potentially benefitting dozens of his former clients. The referee also notes that Attorney Mutschler will have no involvement with billing or fees at the law firm and he will be strictly handling a motion practice.

¶25 For all of these reasons, the referee found by clear, satisfactory, and convincing evidence, that Attorney Mutschler has met all of the criteria for reinstatement of his license to practice law in Wisconsin.

12

¶26 As noted, the OLR has not appealed the referee's recommendation. Upon review of the record, we agree with the referee that Attorney Mutschler has indeed established by clear, satisfactory, and convincing evidence that he has satisfied all of the criteria necessary for reinstatement.

¶27 As the referee noted, this court's denial of Attorney Mutschler's first reinstatement petition focused on his failure to make any restitution payments or have a repayment plan in mind. Since his first reinstatement petition was denied, Attorney Mutschler has made valiant efforts to begin paying restitution, and although his meager income and other financial obligations, including child support, have not allowed him to make much of a dent in the amount owed, he has made a start, and it appears he has done the best he could under the circumstances. As the referee also noted, if Attorney Mutschler's license is reinstated, his employer will automatically deduct $500 per month from his wages to go toward restitution. With the possibility of salary increases over time, reinstatement of Attorney Mutschler's license will give him the capacity to whittle down his restitution obligations in a way that would never be possible if he were precluded from resuming his profession as an attorney. Accordingly, we adopt the referee's findings of fact and conclusions of law, and we accept the referee's recommendation that Attorney Mutschler's license to practice law is Wisconsin should be reinstated. As is our standard policy, we also find it appropriate to impose the full costs of this proceeding on Attorney Mutschler.

13

¶28 IT IS ORDERED that the license of Christopher A. Mutschler to practice law in Wisconsin is reinstated, effective the date of this order.

¶29 IT IS FURTHER ORDERED that within 60 days of the date of this order, Christopher A. Mutschler shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $9,028.76 as of March 29, 2021.

¶30 JILL J. KAROFSKY, J., did not participate.